IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARCHIE TOBIAS, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-17-1757 |
| | § | |
| JENNIFER BROWN, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM ON DISMISSAL**

Archie Tobias, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in June 2017, alleging civil rights violations resulting from a denial of adequate medical care; denial of access to the courts; and denial of due process. Tobias, proceeding pro se and in forma pauperis, sues Jennifer Brown; S. Schumacher; Major R. Pena; S. Mitchell; A. Mukolu; K. Beck; and John Doe Simmon.

The threshold issue is whether Tobias's claims should be dismissed as frivolous.

**I.   Tobias's Allegations**

On May 11, 2015, Tobias was transported from Bexar County Holding Center to the South Texas Intermediate Sanction Facility ("ISF"). Tobias informed ISF personnel of his various health conditions which required daily medications. Tobias states that he suffers from congestive heart failure, complications relating to by-pass heart surgery, high blood pressure, Type II diabetes, and back injuries. Tobias complains that he arrived at the ISF on May 11, 2015, but he did not receive any medications for three days.

O:\RAO\VDG\2017\17-1757.e01.wpd

On May 13, 2015, Tobias informed Lieutenant Lovinggood that he had not received any medications. Lieutenant Lovinggood escorted Tobias to the infirmary where Tobias received some medications.

On May 16, 2015, Tobias requested to be placed on a special diet because he is diabetic. Tobias explains that members of the prison gang, Aryan Brotherhood, were responsible for distributing the food trays. The diet trays were stored on separate food carts. Tobias explains that he was placed on a special diet, but his food was tainted with spit and paint particles. He asked to be removed from the diet because prison officials were tampering with his food tray. Tobias asserts that despite being taken off of the special diet, Tobias was inexplicably placed on the diabetic diet list.

Tobias states that on May 17, 2015, he was denied access to the courts because K. Beck denied him paper, pens, and postage. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 20). Tobias states that he had to wait until May 25, 2015, when his living area was again allowed to make purchases from the commissary. He also complains that he was denied access to the law library, so he was unable to pursue his appeal of his conviction, research a landlord-tenant issue, and challenge a parole revocation hearing. He further asserts that he was not allowed to purchase basic hygiene items. Though Tobias requested to be taken off the diabetic diet, he was placed on the diabetic diet on May 27, 2015.

Tobias states that he was removed from the special diet list on June 8, 2015, and placed back on the list on June 9, 2015. When Tobias showed the tray that was tainted with paint chips, Tobias states he was labeled as a snitch. Tobias states that on June 9, 2015, he accused a white inmate of tampering with his food. Tobias asserts that the white inmate assaulted him. Following the assault,

Tobias was transported to Ben Taub Hospital where he received treatment for his broken nose and skull fractures and prescribed pain medications. Upon his return to ISF, John Doe Simmon failed to issue the medications prescribed by Ben Taub Hospital. Tobias further complains that Nurse Simmon refused to issue a change of clothing, refused to clean off the dried blood, and forced Tobias to wear a bloody hospital gown. Tobias complains that S. Schumacher denied Tobias prescribed pain medications. Tobias asserts that he tried to inform Warden Brown of the problems he was having regarding medications.

Tobias claims that on June 10, 2015, Major R. Pena told Tobias that he had instructed an inmate to assault Tobias. Tobias alleges that Major Pena subjected Tobias to racial slurs by saying, "I'm a white boy, and you got beat down by a white boy." (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 2). Tobias asserts that the defendants conspired to have Tobias assaulted.

On June 11, 2015, Tobias was scheduled for a follow-up appointment for oral surgery at Ben Taub Hospital. Tobias states that he was released on parole and told to report to the San Antonio parole office, or he would be charged with a parole violation. Tobias states that he was forced to choose between seeking treatment at Ben Taub Hospital or receiving a parole violation.

Tobias complains that A. Mukulu, the grievance coordinator, denied Tobias access to the grievance system. Tobias complains that he was unable to obtain a Step One Grievance form.

Tobias seeks compensatory damages of $800,000.00 and punitive damages of $200,000.00.

## II. Standard of Review

28 U.S.C. § 1915 instructs that a court "shall" dismiss an in forma pauperis complaint at any time, if it determines that the complaint is frivolous or it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) (2018). Further, the Court may sua sponte dismiss on
O:\RAO\VDG\2017\17-1757.e01.wpd     3

these grounds, even without serving the defendants. *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) ("Dismissal [under § 1915] is 'often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints.'") (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). The standard under § 1915(e)(2)(B) for dismissing a frivolous complaint applies to both prisoner and non-prisoner complaints. *See Newsome v. EEOC*, 301 F.3d 227, 231-33 (5th Cir. 2002) (per curiam) (affirming dismissal based on § 1915(e)(2)(B) in a non-prisoner case).

"[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999)). A claim is factually frivolous if the facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

To determine whether a complaint fails to state a claim upon which relief may be granted, courts engage in the same analysis as when ruling on a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (citation omitted). To meet this pleading standard, the complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Tobias proceeds pro se in this case. Courts construe pleadings filed by pro se litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed pro se is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When analyzing a pro se plaintiff's complaint, the Court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated").

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative

level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

**III.    The Issue of Limitations**

Dismissal of an action is appropriate when "it is clear from the face of a complaint filed in forma pauperis that the claims asserted are barred by the applicable statute of limitations." *Gartrell*, 981 F.2d at 256. In section 1983 cases, the federal courts apply the forum state's general personal injury statute of limitations. *Burge v. Parish of St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993)(citing *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989)). Although the governing period of limitations is determined by reference to state law, the accrual of a cause of action under section 1983 is determined by reference to federal law. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). Under the federal standard, "a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999)(quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). The plaintiff must be in possession of "critical facts" which indicate that he has been hurt and that the defendants were responsible for the injury. *Stewart v. Parish of Jefferson*, 951 F.2d 681, 684 (5th Cir.), *cert. denied*, 506 U.S. 820 (1992). A plaintiff need not realize that a legal cause of action exists, but must know the facts that would support a claim. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

The Texas period of limitations for personal injury actions is two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2018). Tobias's claims arose from the events between May 11, to June 9, 2015. Tobias did not file this suit until May 28, 2017.

The statute of limitations bars Tobias from asserting his civil rights claims against the named defendants based on events that took place before May 28, 2015. Tobias's claims arising from

events before May 28, 2015 are dismissed under 28 U.S.C. § 1915(e). *Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990).

## IV. The Claim Based on Denial of Medical Care

The Eighth Amendment provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. U.S. Const. amend VIII. Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components – one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendant was deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendant was aware of an excessive risk to plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been

recommended or for which the need is so apparent that *even a layman* would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)(emphasis added). "Deliberate indifference is more than mere negligence or even gross negligence." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010). Specifically, negligent medical care does not constitute a valid section 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). A plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). A misdiagnosis and the resulting inadequate medical care do not violate the Constitution. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); *see also Garrett v. Univ. of Tex. Med. Branch*, 261 Fed. App'x 759, 760 (5th Cir. 2008) (finding no deliberate indifference despite alleged misdiagnosis and incorrect treatment because plaintiff failed to prove defendant *intentionally* treated him incorrectly).

Under exceptional circumstances, the defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. *Farmer*, 511 U.S. at 842; *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). The delay of medical care can also constitute an Eighth Amendment violation but only "if there has been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

The Fifth Circuit has repeatedly held that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs. *See Stewart v. Murphy*, 174

F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Even if a lapse in professional judgment occurred regarding treatment of an inmate, such a lapse amounts to mere negligence or malpractice and is not a constitutional violation. *See Esparza v. Hegman*, 183 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

In *Estelle,* the Supreme Court concluded:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 104-05.

To prevail on a claim for denial of medical care, Tobias must show acts or omissions on the part of the actor sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). That is, Tobias must show that the actor both knew of and disregarded an excessive risk to Tobias's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The showing requires an inquiry into the actor's state of mind. *Id.* at 838. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle*, 429 U.S. at 105-06). The standard is extremely high, requiring evidence of egregious intentional conduct. *Gobert v. Caldwell*, 463 F.3d 339, 346, 351 (5th Cir. 2006). The actor must have "refused to treat [Tobias], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at

346. *See Estelle*, 429 U.S. at 104 n.10 (citing cases of deliberate indifference by prison doctors). Mere delay in medical care constitutes an Eighth Amendment violation only if there has been deliberate indifference that resulted in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Tobias complains that medical personnel at the ISF did not provide him with the medications that had been previously prescribed by the Bexar County Jail. He also complains that the ISF failed to provide him with medications prescribed by Ben Taub Hospital.

Tobias states that on May 11, 2015, he was examined upon arrival at the ISF. He explains that the nurse checked his blood pressure and weight. He alleges that he was denied medications for hypertension, diabetes, and congestive heart failure. Tobias explains that medical personnel told him that they did not have the medications that had been prescribed by the Bexar County Detention Center, in stock. Tobias states that on May 19, 2015, he was examined by a nurse in the infirmary. Tobias complained of breathing problems, and he was prescribed antibiotics. Tobias received a medical pass to have his blood sugar and blood pressure checked. On June 9, 2015, Simmon said he could not prescribe the medications that had been prescribed by Ben Taub Hospital. Tobias has not demonstrated that the medical care provided to him posed a substantial risk to his future health. Tobias states that he was prescribed medications on June 9, 2015. He also received Hydrocodone; Tramadol for headaches. By his own admissions, Tobias was prescribed the following medications on June 12, 2015: Relaxers; catapres 0.1 mg oral tablet; acetaminophen 325 mg; aspirin 81 mg; Coreg 25 mg; Levofloxacin 750 mg; Lisinopril 40 mg; Nefedipim 960 mg; Lasit 40 mg; glipizide 5 mg; and Potassium chloride 20 mg EQ. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 13). Such evidence of examinations and treatment negate Tobias's claim of deliberate

indifference. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977).

Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. Therefore, Tobias's claims are dismissed as frivolous under 28 U.S.C. § 1915(e)(2).

Tobias also complains that the ISF medical personnel did not give him the correct pain medications. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 4). He states that he suffers from congestive heart failure, complications relating to by-pass heart surgery, high blood pressure, Type II diabetes, and back injuries.

"Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Tobias's self-diagnosis of what medications or treatments he believed he needed states nothing more than a disagreement with the medical staff's decisions. Tobias's pleadings and grievance records, which contain evidence of examinations, medications, and diagnoses, do rebut Tobias's contention that his medical care was constitutionally inadequate or that these defendants were deliberately indifferent

to a serious medical need of his. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1995).

The pleadings indicate that Tobias received ongoing treatment for his congestive heart failure, heart condition, high blood pressure, Type II diabetes, and back injuries. At most, Tobias alleges inconsequential delays in medical treatment, unsuccessful medical treatment, and acts of negligence or medical malpractice. Further, his allegation that the medical personnel at the ISF should have prescribed other medications does not amount to deliberate indifference. *See Estelle*, 429 U.S. at 107; *see also Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Tobias has failed to show that the defendants ignored his complaints, refused treatment, "or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Johnson*, 759 F.2d at 1238.

Tobias admits that he was seen by medical personnel on several occasions. Tobias has not alleged facts demonstrating that the defendants were aware of, and disregarded, a substantial risk of harm to Tobias. Nor did he suffer substantial harm as a result of not receiving the prescribed medications.

To succeed on his claims of denial of medical care, Tobias must show (1) deliberate indifference (2) to a serious medical need. Accepting Tobias's claims as true, he had a serious medical need. The question is thus whether he has shown that the defendants were deliberately indifferent to that need. He alleges that medical personnel were deliberately indifferent when they delayed medical treatment by three days. Tobias does not allege he suffered substantial harm as a result of the alleged delays in treatment. *See Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)) (explaining that a delay in

treatment "can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] results in substantial harm"); *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that "the court shall dismiss [a claim] at any time if the court determines that . . . the action or appeal is frivolous or malicious [or] fails to state a claim on which relief may be granted").

Tobias has not alleged facts demonstrating the defendants were aware of, and disregarded, a substantial risk of harm to Tobias. Nor did he suffer substantial harm as a result of the delay in treatment. Thus, Tobias's claim based on deliberate indifference to his serious medical needs is DISMISSED as frivolous. 28 U.S.C. § 1915(e)(2)(B)(i).

## V. The Claim Based on Denial of Access to the Courts

The right of access to the courts is a fundamental constitutional right grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses. *See Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir. 1993). "Any deliberate impediment to access, even delay of access, may constitute a constitutional deprivation." *Jackson v. Procunier,* 789 F.2d 307, 311 (5th Cir. 1986). To prevail on a denial of access to the courts claim, a plaintiff suing under Section 1983 must establish that he has been prejudiced in connection with some identifiable past, pending, or proposed legal proceeding. *See Lewis v. Casey,* 518 U.S. 343, 349-53 (1996).

In the case at bar, Tobias states that he was denied access to the courts because K. Beck denied him paper, pens, and postage on May 17, 2015. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 20). He also complains that he was denied access to the law library. Tobias states that he was working on the following cases:

(1)    Cause Number 485472, appeal of his conviction for possession of marijuana in Bexar County. Tobias states that he wished to research the address of the appellate court. Tobias

acknowledges that he was represented by counsel on this criminal matter.

(2)     Cause Number 41140261 in Bexar County Precinct 4. Tobias was researching a landlord-tenant issue. Tobias states that he was evicted.

(3)     Challenge of a parole revocation hearing.

As noted in Section III, *supra*, Tobias's claims rising from events prior to May 28, 2015, are barred by the statute of limitations. Alternatively, the Court finds that this claim lacks merit.

Tobias states that he was denied access to the courts as a result of the delay in receiving writing supplies. Tobias has failed to demonstrate prejudice as a result of the defendants' conduct. Tobias's access to the courts claim is therefore DISMISSED as frivolous.

**VI.     The Claim Based on an Inadequate Grievance System**

Tobias alleges that the defendants violated his civil rights by failing to resolve the complaints presented in his grievances. "A prisoner has a liberty interest only in freedoms from restraint imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (internal citation and quotation omitted). An inmate does not have a constitutionally protected liberty interest in having grievances resolved to his satisfaction. There is no due process violation when prison officials fail to do so. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.*, slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing, et al.*, slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). The defendants' alleged failure to address the grievances to Tobias's satisfaction did not violate his constitutional rights.

Tobias's due process claim based on an inadequate grievance procedure lacks merit.

## VII. The Claim Based on a Failure to Comply with Prison Regulations

Tobias further alleges that prison officials did not follow prison rules and regulations regarding placement on a special diet. Fifth Circuit case law is clear that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met. *Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir.), *cert. denied*, 516 U.S. 860 (1995); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Even assuming that officers violated TDCJ-CID regulations in notifying inmates of disciplinary charges, Tobias has failed to establish a violation of a constitutional right. Tobias has not shown that any errors relating to placement on a special diet amounted to a constitutional due process violation.

The mere failure to comply with prison rules and regulations does not, without more, give rise to a constitutional violation. *Meyers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). A prison official's failure to follow state regulations does not establish a constitutional violation. *See Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989). Tobias's claim that his due process rights were violated by the failure of prison officials to comply with prison regulations lacks an arguable basis in law because, in light of *Sandin v. Conner*, 515 U.S. 472 (1995), Tobias has no created liberty interest in the regulations of the Texas Department of Criminal Justice - Correctional Institutions Division.

## VIII. The Claim Based on Verbal Threats

Tobias complains that Officer Pena used racial slurs against him, by saying, "I'm a white boy, and you got beat down by a white boy." (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 2). Threats, verbal taunts and racial slurs do not give rise to liability under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). In *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir.

2002), the Fifth Circuit held that verbal abuse and requiring an inmate to beg for food did not provide a basis for an actionable claim under § 1983. The Fifth Circuit summarized the case law concerning verbal abuse as follows:

> [I]n the Eighth Amendment context, our circuit has recognized as a general rule that "mere threatening language and gestures of a custodial officer[r] do not, even if true, amount to constitutional violations". *McFadden*, 713 F.2d at 146 (quoting *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okla.1977)); *accord Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.) (the use of words, no matter how violent, does not comprise a § 1983 violation), *cert. denied*, 414 U.S. 1033 (1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation under § 1983).

The complaint about Major Pena using racial slurs simply does not provide a basis for a federal civil rights lawsuit. *Robertson v. Plano City of Tex.*, 70 F.3d 21, 25 (5th Cir. 1995), citing *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992).

Tobias's claims based on verbal harassment lack merit and are dismissed as frivolous.

## IX. The Claims Based on Respondeat Superior

Tobias sues Jennifer Brown, Warden of the ISF. Tobias claims that this defendant was responsible for the operation of the ISF. Tobias further asserts that S. Schumacher was the medical supervisor responsible for ensuring that all inmates receive adequate medical treatment. Tobias has not alleged that these supervisory defendants were personally involved in any of the constitutional violations Tobias alleges. Tobias seeks to impose liability on these defendants solely on the basis of their positions as ultimate supervisors.

Individual liability under section 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of employees. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534

(5th Cir. 1997). Supervisory officials may be liable if their own action or inaction, performed with a certain degree of gross negligence or deliberate indifference, proximately causes a constitutional violation. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Tobias alleges that these supervisory defendants are liable for actions of their subordinates; such allegations fail to state a claim under section 1983. Tobias's claims that the individual employees at the TDCJ-CID are acting under the direction of the supervisory defendants are, as a matter of law, insufficient. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978); *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). The misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor. *Southard*, 114 F.3d at 551. Tobias's claim that prison officials were acting under the direction of the supervisory defendants does not affirmatively link the misconduct of the named prison employees to the actions of the supervisory defendants.

To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force behind the plaintiff's harm. *See Monell*, 436 U.S. at 692-94; *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The supervisor's conduct must be measured against the standard of deliberate indifference. *Alton*, 168 F.3d at 200. "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Brenoettsy*, 158 F.3d at 911. "The standard of deliberate indifference is high." *Id.* (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)). Tobias does not allege that these supervisory defendants were aware of and disregarded a substantial risk to Tobias's safety. Tobias

does not set out specific facts showing that these defendants were personally involved in the violations of Tobias's civil rights. The claims against Warden Brown and S. Schumacher are dismissed.

## X.     The Claims Against the Defendants in Their Official Capacities

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White*, 457 U.S. 85, 90 (1982). To the extent Tobias sues the defendants for damages in their official capacities, those claims are barred by the Eleventh Amendment.

The Eleventh Amendment does not bar Tobias's claim for prospective relief. Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's "policy or custom" must have played a part in the violation of federal law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991)(quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). Tobias has not demonstrated that an ISF policy caused a violation of his constitutional rights.

## XI.    Conclusion

The action filed by Archie Tobias lacks an arguable basis in law. His claims are DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i). Any remaining pending motions

are DENIED as moot.

SIGNED at Houston, Texas, on    Nov. 6    , 2019.

*Vanessa D. Gilmore*
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE